**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. 17-617** |
| **NAMIR WHITE** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                          **June 10, 2021**

Following a bifurcated jury trial, Defendant Namir White was convicted of the thirteen

counts charged in the second superseding indictment: Count One: robbery which interferes with

interstate commerce; Count Two: using and carrying a firearm during a crime of violence, and

aiding and abetting; Count Three: theft of government property, and aiding and abetting; Count

Six: dealing in firearms without a license; and Counts Seven through Fifteen: felon in possession

of a firearm.[1] White now moves for a judgment of acquittal and for a new trial.[2] For the reasons

set forth below, his motion will be denied.[3]

## I.   TRIAL EVIDENCE

The evidence at trial showed that between April 11, 2017, and August 27, 2017, White

sold 11 guns, through nine separate transactions, to an Alcohol, Tobacco, Firearms and

Explosives ("ATF") cooperating witness ("CS"). These transactions were audio- and video-

---

[1] *See* Jury Verdict Form [Doc. No. 141]; Supp. Jury Verdict Form [Doc. No. 142].

[2] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183].

[3] White also filed a *pro se* motion to dismiss. *See* Def.'s Mot. to Dismiss [Doc. No. 193]. Because he is represented by counsel, this motion will be dismissed. *See United States v. D'Amario*, 328 F. App'x. 763, 764 (3d Cir. 2009) ("[A] district court is not obligated to consider *pro se* motions by represented litigants.").

recorded and monitored by ATF special agents. Agents also monitored and recorded the telephone calls and text communications negotiating and arranging these transactions. White did not possess a federal firearms license and was prohibited from possessing firearms because he had been convicted of a prior felony offense.

On November 2, 2017, White and his codefendant Wylie offered to sell three firearms to the CS for a total price of $3,200. Like the prior nine purchases, agents recorded the telephone discussions with both White and Wylie arranging the details of the transaction. As with the other transactions, the parties identified the weapons and negotiated on the price. The agents provided the CS with $3,200, drawn from ATF funds, to make the purchase, and prior to the transaction, outfitted the CS with audio/video recording equipment.

The controlled purchase was to take place at a McDonald's, where the agents had set up fixed surveillance. But as the CS walked to the location, he saw White's car pull down an adjacent street. Against the orders of the agents, the CS met the two at the car, which was parked on the side of the street.[4] White was in the driver's seat, Wylie was in the front passenger seat, and the CS entered the back seat. The CS gave White the $3,200 in twenties. White told Wylie to get the guns from the trunk; White began to count the money. Wylie retrieved a box from the trunk, returned to the passenger's seat, and handed it to the CS.[5]

Because the transaction did not occur at the planned location, the agents had followed the CS in an unmarked van. They drove past White's car and saw Wylie at the trunk. They continued

---

[4] The CS was instructed not to make the buy if they were not at the McDonald's. He testified, "If they wasn't doing the buy at McDonalds, I was supposed to come back, but I went anyway." Tr. 1/14/20 [Doc. No. 171] at 129.

[5] *See id.* at 52–54; 129–31.

driving past and pulled over so as to watch the transaction through the van's sideview mirror.[6] However, White had correctly identified the van as law enforcement when it passed by. Concerned, he drove himself, Wylie, and the CS to a more secluded street. As one agent testified, "the vehicle just whipped and made a hard left turn down a side street."[7]

At this new location, the CS looked into the container and discovered that it did not contain guns—instead it was filled with heavy pieces of metal. The CS asked for the money back. Wylie expressed surprise that there were no guns and appeared to make a phone call that was unanswered.[8] Wylie then told the CS that the transaction was "dead,"[9] and when the CS again asked for the money, Wylie replied "it's dead. This cash is ours."[10] Wylie pointed a handgun at the CS and told him to "[g]et up out of the car . . . before I have to pop you with this jawn, dog."[11] The CS remained in the back seat, believing that Wylie would not shoot him while he was in White's car. Wylie then exited the car.

As this was occurring, the agents were attempting to locate the CS and White's car. As they drove around the area, they looked down a side street where they saw White's car and "Mr. Wylie standing kind of outside of the car, the door was kind of open."[12]

---

[6] A "transmitter" was also set up, which allowed the agents to listen to the transaction in real time. However, the audio from the transmitter is "kind of muddled," and only allowed the agents to "hear enough to kind of know what's going on." *Id.* at 77.

[7] *Id.* at 55.

[8] Agent Bowman testified that Wylie was only pretending to make a call, and that his phone showed that no calls were made during the course of the transaction. *Id.* at 84.

[9] *Id.* at 87.

[10] *Id.*

[11] *Id.* at 134. The evidence at trial showed that the word "jawn" was used to refer to Wylie's handgun.

[12] *Id.* at 56.

Again, the agent's van was noticed by White, and White warned Wylie about the law enforcement in the area. Wylie walked away from the scene. After Wylie disappeared, the CS finally exited the car, and he, too, walked away. As he was leaving, he asked White about what had just occurred, White replied "that's Rell [Wylie] for you. That's Rell."[13] With both Wylie and CS gone, White drove off.

When the agents returned to where they had seen White's car, everyone was gone. But a few minutes later they were able to locate the CS, who explained what had just happened. Shortly after that, White was arrested at a nearby gas station. Approximately 45 minutes later, Wylie was spotted near his residence. Wylie was arrested, and when he was taken into custody, he was searched. The agents found a handgun and $3,200 in cash. The agents also found 20 packages of fentanyl-laced heroin concealed in Wylie's underwear.

## II.   WHITE'S RULE 29 MOTION

White has moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on Counts One, robbery interfering with interstate commerce, Count Two, aiding and abetting the use of a firearm during a crime of violence, Count Three, theft of government property, and Court Seven, felon in possession of a firearm on April 11, 2017.[14]

### A.  Standard of Review

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 may only be granted where the evidence is insufficient to sustain the conviction.[15] The Court must "sustain the jury's verdict if there is substantial evidence, viewed in the light most favorable to

---

[13] *Id.* at 131.

[14] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 2, 6.

[15] *United States v. Gonzales*, 918 F.2d 1129, 1132 (3d Cir. 1990).

the government, to uphold the jury's decision."[16] In ruling on such a motion, a court may not weigh the evidence, or make credibility determinations, which are within the jury's domain.[17] Rather, when considering the evidence in the light most favorable to the verdict winner, the Court must draw all reasonable inferences in their favor, and "presume that the jury properly evaluated credibility of witnesses, found the facts, and drew rational inferences."[18] "[T]he fact that alternative inferences exist is irrelevant."[19] "The prosecution may satisfy its burden entirely through circumstantial evidence."[20] Viewing the evidence in its entirety, the verdict must be upheld unless "no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt."[21]

### B. Counts One, Two, and Three – Hobbs Act robbery, aiding and abetting the use of a firearm during a crime of violence, and theft of government property

Counts One, Two, and  Three stemmed from the November 2, 2017 robbery of the CS. White argues that the evidence against him is insufficient because his actions "clearly indicate

---

[16] *Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (citing *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003)).

[17] *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) ("[the Court] must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [the Court's] judgment for that of the jury").

[18] *United States v. Wasserson*, 418 F.3d 225, 237 (3d Cir. 2005). *See also United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010); *United States v. Cunningham*, 517 F.3d 175, 177 (3d Cir. 2008); *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002).

[19] *Boria*, 592 F.3d at 486 (Fisher, J., concurring) (citing *United States v. Iafelice*, 978 F.2d 92, 97 n.3 (3d Cir. 1992)).

[20] *United States v. Mercado*, 610 F.3d 841, 845 (3d Cir. 2010) (citing *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006)).

[21] *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987); *see also Brodie*, 403 F.3d at 134 (In conducting the sufficiency inquiry, a court does "not view the government's evidence in isolation, but rather, in conjunction and as a whole."); *United States v. United States Gypsum Co.*, 600 F.2d 414, 417 (3d Cir. 1979) ("The character and effect of a conspiracy [is] not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (internal citation and quotations omitted).

that Mr. White neither knew about the robbery beforehand nor was involved in the robbery itself." [22] White points to three pieces of evidence. He argues that before the robbery, White would not have counted the money unless he believed there was going to be a sale, during the robbery, he drove to the secluded street because he believed there to be illegal firearms in his car, and after the robbery, he drove to a gas station because he believed that he had done nothing wrong. [23]

Agent Bowman testified that in his "experience generally as an ATF agent," it would not make sense for a gun dealer "to negotiate a deal for three specific firearms" without knowing whether he had them or not. [24] Agent Bowman further testified that White was a "cautious, careful and deliberate individual" who would not have gone into a transaction without knowing if he actually possessed the weapons. [25] A reasonable jury could have found that White knew that they did not have the firearms to sell that day.

A reasonable jury could also find that because White and Wylie knew they did not have the guns in the car, they had planned to first try to deceive the CS, with the robbery as a backup plan if their initial subterfuge failed. A reasonable jury could have found that counting the money, driving to the secluded street, and acting as if a normal sale was occurring was part of the

---

[22] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 4.

White also argues that he had no motive to rob the CS. *Id.* at 2. But motive is not an element of any of the offenses for which White was charged. The Court instructed the jury that "Proof of bad motive is not required to convict. Further, proof of bad motive alone does not establish that the Defendant is guilty and proof of good motive alone does not establish that the Defendant is not guilty." Tr. 1/15/20 #2 [Doc. No. 191] at 48. A reasonable jury could have found that White had no motive and still have found him guilty.

[23] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 4–6.

[24] Tr. 1/14/20 [Doc. No. 171] at 114–15.

[25] *Id.* at 115–16.

initial deception. Additionally, a reasonable jury could have found that White drove to the secluded street because of the backup plan or because he was concerned about the illegal firearm in Wylie's possession. Finally, a reasonable jury could have determined that White nonchalantly drove to the gas station because he assumed that the CS would not report a robbery that had occurred during an illegal firearm sale.

The jury did not rely only on witness testimony. The video of the robbery was played multiple times and both Agent Bowman, who had monitored the events, and the CS walked the jury through the recording and transcript. The jury heard Wylie say to the CS "[t]his cash is *ours,*" and heard Wylie threaten to shoot the CS.[26] The jury was able to watch and evaluate White's behavior and demeanor throughout the robbery, and heard evidence showing that Wylie called White shortly after the robbery.[27] The evidence presented was more than sufficient for a reasonable jury to convict White of Counts One, Two, and Three.

### C.  Count Seven – felon in possession of a firearm

Count Seven arose from White's April 11, 2017, sale of a firearm to the CS. White argues that the evidence is insufficient to show possession, because the CS had negotiated the sale with Louis Hill, and he asserts that Hill possessed the firearm at all times during the transaction.[28] But the jury heard an audio recording of the sale, in which White said "I'm selling

---

[26] Tr. 1/14/20 [Doc. No. 171] at 88, 134. (emphasis added)

[27] The first call made on Wylie's phone after the robbery was a three-minute call to White. *Id.* at 116.

[28] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 6.

you my only gat [gun]."[29] The evidence was sufficient for a reasonable jury to find that White illegally possessed a firearm on or around April 11, 2017.

Moreover, as to all the arguments White has made in his Rule 29 motion, he has not contested the sufficiency of the evidence. Instead White argues that the Court should consider the evidence that was heard by the jury, draw different inferences, and reach a different conclusion. Indeed, White made these same arguments to the jury at trial.[30] During his closing arguments, White's counsel invited the jury to draw the inference that White did not know about or participate in the robbery and that Hill had possessed the firearm during the April 11 sale. The jury declined. It is not the Court's role to second-guess a decision by the jury that was supported by the evidence; White's Motion for a Judgment of Acquittal is denied.

### III.   WHITE'S RULE 33 MOTION

White has moved for a new trial under, under Federal Rule of Criminal Procedure 33, as to Counts One, Two, Three, Seven, and to Count Six, dealing in firearms without a license.

#### A.  Standard of Review

Under Federal Rule of Criminal Procedure 33, the trial court may grant a new trial when a trial error occurred or when the trial court does not believe that the evidence supports the jury's verdict. Rule 33 provides the trial court with sound discretion when analyzing a motion for new trial.[31] Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion for a new trial on the ground that the verdict was contrary to the weight of the evidence,

---

[29] Gov.'s Resp. Opp. Mot. for J. of Acquittal [Doc. No. 198] at 10 (quoting Trial Exhibit 2, transcript at 2); s*ee also* Tr. 1/13/20 [Doc. No. 170] at 124.

[30] *See* Tr. 1/15/20 [Doc. No. 172] at 46–53, 60; Tr. 1/60/20 [Doc. No. 166] at 10.

[31] *United States v. Rottschaefer*, 178 F. App'x 145, 149 (3d Cir. 2006).

it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case.[32] A "district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted."[33]

### B.  Counts One, Two, Three, and Seven

Reiterating his Rule 29 arguments, White asserts that the jury's verdict as to Counts One, Two, Three, and Seven "is against the weight of the evidence, and the interests of justice require a new trial." [34] For a Rule 33 Motion, the Court must exercise its own judgment in assessing the Government's case. Considering the totality of the evidence, including the audio- and video-recordings and the testimony of the witnesses, the Court determines that there is no danger that a miscarriage of justice has occurred. A new trial is not warranted as to Counts One, Two, Three, and Seven.

### C.  Count Six – dealing in firearms without a license

White also argues that a new trial should be granted as to Count Six, dealing in firearms without a license, because the Court failed to instruct the jury on entrapment.[35] An entrapment instruction is only appropriate if a defendant can show "inducement by the government to

---

[32] *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002); *United States v. Stillis*, No. 04-680-03, 2007 WL 2071899, at *3 (E.D. Pa. July 16, 2007), aff'd, 437 F. App'x 78 (3d Cir. 2011).

[33] *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (internal quotations omitted). *See also United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (motions for a new trial based on the weight of evidence "are to be granted sparingly and only in exceptional cases").

[34] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 8.

[35] See *id.*

commit the crime" and that the defendant has a "lack of predisposition to commit the crime."[36] White has the "burden of production" for both elements, and did not meet that burden here.

Solicitation, without more, is insufficient to show an inducement; a defendant must show that the government, or its agents, went beyond "the typical sting in which the government merely offers an ordinary opportunity to commit a crime."[37] White has made no such showing. White has only speculated that an inducement may have occurred during unmonitored and unrecorded calls between White and the CS.[38] White has not met the burden of production as to the inducement prong.

White also cannot show a lack of predisposition. Over a five-and-a-half-month period White illegally sold 11 firearms through nine separate transactions. The recordings show White aggressively negotiating the price for each gun, carefully counting the money during the sales, and wiping the fingerprints from the guns he sold. White did not show any hesitancy to deal in firearms and executed the transactions in a careful and deliberate manner.[39] Because no entrapment instruction was warranted,[40] White's motion for a new trial fails.

---

[36] *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016).

[37] *Id.* at 692 n.8 (quoting *United States v. Blitch*, 773 F.3d 837, 845 (7th Cir. 2014)); *see also id.* at 690.

[38] *See* Def.'s Mot. for J. of Acquittal and for a New Trial [Doc. No. 183] at 9 ("What we do not know – and what made the entrapment instruction particularly important – is what harassment, persuasion, fraudulent representations, threats, coercive tactics, or pleas based on need, sympathy, or friendship [the CS] employed in order to induce Mr. White to participate in these sales.").

[39] *See United States v. Fedroff*, 874 F.2d 178, 184 (3d Cir. 1989) ("[T]he defendant's reluctance to commit the offense is the most important factor in determining predisposition.").

[40] *See Id.* at 181 (citations omitted) ("Although entrapment is generally a question for the jury, the trial court will not instruct on entrapment unless the defendant has produced sufficient evidence on both prongs of the defense.").

**IV.   CONCLUSION**

A jury considered the evidence and found White guilty, beyond a reasonable doubt, of all charges. There is no basis for this Court to disturb the jury's conclusion. White's motion will be denied. An order will be entered.